IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>          Defendants. | Civil Action No. 15-614-RGA |

**SPECIAL MASTER ORDER #6 – RULING ON DISH DEFENDANTS' MOTION TO COMPEL PLAINTIFF TQ DELTA, LLC TO PROVIDE A MORE COMPLETE DISCLOSURE UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iii) AND A MORE COMPLETE RESPONSE TO DISH'S INTERROGATORY NO. 1**

**I.     INTRODUCTION**

Pending before the Special Master is Defendants DISH Network Corp., DISH Network LLC, DISH DBS Corp., and DISH Technologies L.L.C.'s (collectively "DISH") motion to compel Plaintiff TQ Delta, LLC ("TQ Delta") to provide a more complete disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and a more complete response to DISH's Interrogatory No. 1 (the "Motion"). TQ Delta opposes the Motion on grounds that it has provided sufficient damages-related disclosures through its Rule 26 disclosures and responses to Interrogatory No. 1, including supplements thereto. After considering the written submissions of the parties, for the reasons set forth below, IT IS HEREBY ORDERED that the Motion is GRANTED.

## II.   BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiff initiated this action on July 17, 2015 alleging that DISH infringed seven (7) of TQ Delta's patents.[1]  (D.I. 1).  On November 23, 2015, TQ Delta served DISH with its initial disclosures.  (D.I. 28)  On May 6, 2016, DISH served TQ Delta with DISH's First Set of Interrogatories to TQ Delta, which included Interrogatory No. 1.  (D.I. 73).  Interrogatory No. 1 specifically seeks:

> For each Asserted Patent, describe the full factual and legal bases for TQ Delta's damages claims against DISH, including but not limited to: (1) the amount of damages sought as to each Accused Product; (2) the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount, if any; (3) the type of damages sought (e.g., lost profits, established royalty, reasonable royalty, etc.); (4) all allegedly comparable licenses or settlement agreements and the factual circumstances related to each such license or settlement agreement; (5) the date of the purported hypothetical negotiation, if any; (6) all factors, including those described under *Georgia-Pacific Corp. v. U.S Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), that TQ Delta contends support its damages claims and a description of how each such factor allegedly supports its claims; and (7) all evidence allegedly supporting TQ Delta's contentions with respect to the above.

On or about June 9, 2016, TQ Delta served DISH with its objections and response to Interrogatory No. 1. (D.I. 87).

On December 20, 2016, the Court stayed this litigation pending resolution of *Inter Partes Reviews* ("IPRs") relating to the patents-in-suit. (D.I. 214). Only two (2) of the eight (8) asserted patents survived the IPRs – the '158 patent and the '243 patent. On April 13, 2021, the Court lifted the stay and implemented an amended case schedule. (D.I. 238). In accordance with the

---

[1] On September 9, 2015, TQ Delta filed a First Amended Complaint for Patent Infringement alleging infringement of an eighth patent that issued after TQ Delta filed its original Complaint. (D.I. 7).

amended case schedule, on May 21, 2021, TQ Delta served a supplemental objection and response to Interrogatory No. 1. (D.I. 249).

On July 1, 2021, DISH raised deficiencies regarding TQ Delta's responses to it damages discovery, including TQ Delta's failure to provide a computation of damages and identification of supporting material required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ("Rule 26(a)(1)(A)(iii)"), and requested that TQ Delta produce all licenses to the asserted patents. (Op. Br., Ex. C). On July 13, 2012, TQ Delta agreed to supplement its response to Interrogatory No. 1. On July 28, 2021, TQ Delta served DISH with its second supplemental response to Interrogatory No. 1 (the "Second Supplemental Response"). (D.I. 278). On August 6, 2021, DISH informed TQ Delta of the continued deficiencies that existed in the Second Supplemental Response. On August 30, 2021, DISH and TQ Delta met and conferred and, as a result, TQ Delta agreed to supplement its initial disclosures and to supplement its response to Interrogatory No. 1 for the third time.

On September 14, 2021, TQ Delta served DISH with its First Supplemental Rule 26(a)(1) Initial Disclosures ("Supplemental Rule 26(a)(1) Disclosures") and its Third Supplemental Objection and Response to Interrogatory No. 1 ("Third Supplemental Response").[2] (D.I. 306). On September 27, 2021, the parties met and conferred and agreed that they were at an impasse regarding the adequacy of TQ Delta's Damages Disclosures.

---

[2] The Supplemental Rule 26(a)(1) Disclosures and the Third Supplemental Response are substantively identical and, therefore, are collectively referred to as "TQ Delta's Damages Disclosures." The Supplemental Rule 26(a)(1) Disclosures are attached to DISH's opening brief at Exhibit A, and TQ Delta's answering brief at Exhibit B, and are cited to as "R. 26. Discl. at _." The Third Supplemental Response is attached to DISH's opening brief at Exhibit B, and TQ Delta's answering brief at Exhibit A, and are cited to as "Rog. 1 Resp. at _."

Accordingly, on October 1, 2021, DISH filed the Motion and lodged its opening letter brief ("Op. Br."). DISH asserts that, to date in this litigation, "TQ Delta has yet to identify: i) a single comparable license in its possession; ii) the DISH products and services that may be part of a damages royalty base; and iii) any other factual damages information." (Op. Br. at 1). Thus, DISH requests the Court to enter an Order compelling TQ Delta to provide its Rule 26(a)(1)(A)(iii) computation of damages, and a complete response to Interrogatory No. 1, including an identification of what constitutes the royalty base, the appropriate royalty rate, comparable licenses, the incorporation of convoyed or collateral sales in the damages analysis, the incorporation of recurring or subscription revenue in the damages analysis, and the identification of all documents that TQ Delta will rely upon to support its damages allegations.

On October 8, 2021, TQ Delta submitted its answering letter brief opposing the Motion ("Ans. Br."). TQ Delta contends that it has provided DISH with "sufficiently thorough damages-related disclosures in the form of its Rule 26 disclosures and interrogatory responses . . . particularly given the stage of the proceedings." (Ans. Br. at 1). Specifically, TQ Delta contends that its Damages Disclosures sufficiently provide DISH with its damages-related disclosures because they "set forth more than nine pages of legal and factual bases for its damages claim." (Ans. Br. at 1). More specifically, TQ Delta contends that it has disclosed the following in its Rule 26 damages disclosure and response to Interrogatory No. 1, including supplements:

- [TQ Delta] intends to seek damages under a reasonable royalty calculation, plus interest and costs, treble damages, and attorneys' fees beginning from the date of issuance of the patents-in-suit, including damages for units deployed prior to this date but utilized afterwards. ([Rog. 1 Resp.] at 13-14; [R. 26 Discl.] at 7.)

- [TQ Delta] indicated that it is not seeking lost profits. ([Rog. 1 Resp.] at 14; [R. 26 Discl.] at 7.)

- Among the generally accepted methods to determine a reasonable royalty, [TQ Delta] identified are the Analytical Method and the Hypothetical Negotiation Approach and provides a description of each approach, including the *Georgia-Pacific* factors TQ Delta's expert may consider. ([Rog. 1 Resp.] at 14-15; [R. 26 Discl.] at 8-9.)

- [TQ Delta] also indicated that it may pursue one or more of the following methods for assessing patent damages: Income Approach, Market Approach, and Cost Approach, with a description of each. ([Rog. 1 Resp.] at 17-18; [R. 26 Discl.] at 7, 10-14.)

- Under the Income Approach, which [TQ Delta] indicated focuses on the economic value, [TQ Delta] identified the types of information and specific information the expert may rely upon, including "units, revenues, costs, and margins[,]" as well as a description of the state of the demand for and adoption of MoCA and the identification of a number of different sources for such information. ([Rog. 1 Resp.] at 18-19; [R. 26 Discl.] at 11-12.)

- Under the Market Approach, which [TQ Delta] indicated "involves an analysis of arm's length market transactions between unrelated parties for the same or similar intellectual property[,]" [TQ Delta] indicated that it may rely on similar or comparable license or settlement agreements and cited a number of potential comparable agreements. For example, [TQ Delta] stated that "[o]ne potentially comparable benchmark for the Market Approach is TiVO's offer to license as posted on its website[,]" for which [TQ Delta] provided details of the running royalty and initial fee offers. ([Rog. 1 Resp.] at 19-20.) Similarly, [TQ Delta] cited to another TiVO settlement as "[a]nother potentially comparable benchmark..." and further elaborated regarding the same. (*Id.*) [TQ Delta] further disclosed a number of licenses "that may encompass the asserted patents" and directed DISH to specific Bates ranges of Aware licenses (the predecessor-in-interest of [TQ Delta]) and [TQ Delta] license agreements. In addition, [TQ Delta] identified a number of license agreement produced by DISH. (*Id.* at 20-21.)

- TQ Delta further stated that it "may rely upon Defendant's financial performance associated with sale/rental/lease/deployment and/or other benefits or consideration derived directly or indirectly from the Accused Products and/or the services employing the same." (*Id.* at 15.) In

5

- addition, [TQ Delta] cited to several exemplary DISH documents as examples of such information upon which it may rely. (*Id.* at 16.)

- [TQ Delta] indicated that its patents are standard essential, but explained why it is not bound to license the '158 and '243 patents on so-called FRAND terms. (*Id.* at 16.)

- [TQ Delta] also identified the date of the hypothetical negotiation as "on or around the issuance date of the Asserted Patent(s)." (*Id.* at 17.)

(Ans. Br. at 1-2). TQ Delta further contends that DISH's assertion that TQ Delta has failed to identify a single comparable license in its possession is "misleading" because TQ Delta has disclosed "potentially comparable licenses of which it is currently aware." (*Id.* at 2-3). Lastly, TQ Delta contends that it has "provided a detailed description of information and identification of documents that constitute the factual underpinnings of [TQ Delta's] damages case at this stage of the proceedings." (*Id.* at 3).

### III. LEGAL STANDARD

Rule 26(a)(1) of the Federal Rules of Civil Procedure provides:

> (A) A party must, without awaiting a discovery request, provide to the other parties:
>
> * * *
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii).

"A party must make its initial disclosures based on the information then reasonably available to it . . . [and] is not excused from making its disclosures because it has not fully

6

investigated the case . . ." Fed. R. Civ. Pro. 26(a)(1)(E). However, at the Rule 26 disclosure stage, "a party [is not] expected to provide a calculation of damages . . . [that] depends on information in the possession of another party or person." Fed. R. Civ. P. 26 advisory committee notes (1993). "The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence." *Alza Corp. v. Andrx Pharms., LLC*, 2008 WL 1886042, at *2 (D. Del. Apr. 28, 2008) (citation omitted).

Parties are under a continuing obligation to supplement their Rule 26 disclosures, as well as their interrogatory responses. Specifically, Rule 26 requires:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory . . . — must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)-(B).

## IV.   DISCUSSION

DISH seeks an Order to compel TQ Delta to supplement its Damages Disclosures to (1) provide DISH the requisite computation of each category of damages that TQ Delta claims and to produce or otherwise make available for inspection and copying under Rule 34 the documents or other evidentiary material on which each computation is based; and (2) identify what TQ Delta contends constitutes the royalty base, the appropriate royalty rate, comparable licenses, any convoyed or collateral sales incorporated in the damages analysis, any recurring or subscription revenue incorporated in the damages analysis, and to identify any documents that TQ Delta will rely upon to support its damages allegations. Having carefully reviewed and evaluated TQ Delta's

Damages Disclosures and the parties' respective briefing, the Special Master finds that TQ Delta's Damages Disclosures are deficient in some respects. Thus, DISH is entitled to some relief in the form of the supplementing of TQ Delta's Damages Disclosures.

### A. TQ Delta Must Supplement Its Damages Disclosures In Certain Respects.

Again, Rule 26 requires a party to disclose "a computation of any category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). In applying Rule 26, courts[3] generally have construed "computation" to require "a specific computation of a plaintiff's damages," which includes both an estimate of the amount of damages a party seeks, and "a disclosure of evidentiary material upon which the category of damages is based." *Koninklijke Philips Elecs. N.V. v. ZOLL LifeCor Corp.*, 2017 WL 4764670, *2 (W.D.Pa. Oct. 20, 2017) (*citing Stemrich v. Zabiyaka*, 2013 WL 4080310, at *1 (M.D. Pa. Aug. 13, 2013).[4] Thus, in a patent infringement action, Rule 26 disclosures require that a plaintiff disclose, among other things, its claimed royalty rate and royalty base, the *Georgia-Pacific* factors it will rely upon as well as "all evidence it will rely on for that factor," and any and all license agreements it contends are comparable. *Brandywine Commc'ns Techs., LLC v. Cisco*

---

[3] The Special Master was unable to find any published case in this District defining the precise requirements of a Rule 26 "computation." For that reason, the Special Master cites cases from the Federal Circuit, the Third Circuit, other district courts within the Third Circuit, and elsewhere when appropriate.

[4] *See also In re Oakwood Homes Corp.*, 340 B.R. 510, 542 (Bankr. D. Del. 2006) (granting a motion to compel damages computation under Rule 26 and ordering that plaintiffs provide a rough estimate of its damages and the facts and methodology on how plaintiffs came to its estimates); *N. Am. Communs., Inc. v. Sessa*, 2015 WL 5714514, at *12, (W.D. Pa. Sept. 29, 2015) (granting a motion to compel initial disclosures where the plaintiff "failed to provide a dollar figure or any analysis regarding its computation of damages" and supplied "no proffered reason why [it] cannot provide Defendant with the computation of its damages"); *Stemrich v. Zabiyaka*, 2013 WL 4080310, at *3 (M.D. Pa. Aug. 13, 2013) (holding that "Plaintiffs must disclose a computation of each category of damages using the 'best information available' at the present time, and supplement that information as it becomes available," because "the court will not accept that Plaintiffs have absolutely no clearer computation").

*Sys., Inc.*, 2012 WL 5504036, *1 (N.D. Cal. Nov. 13, 2012) (holding that plaintiff must disclose and specify damages "the best it can on pain of preclusion" even though some of the necessary information may lie with the accused infringer.)

Courts also require a plaintiff to provide its factual bases and evidentiary material upon which its claimed damages are based in response to damages contention interrogatories. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1 (D. Del. Oct. 22, 2013) (ordering that plaintiff supplement their supplemental responses to defendants' damages contention interrogatories to "provide [plaintiffs'] good faith bases for electing their theories of recovery."); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, Civil Action No. 14-878-LPS-CJB, D.I. 101 at 1-2 (D. Del. Jan. 28, 2016) (granting a motion to compel a supplemental response to defendant's interrogatory relating to plaintiff's claim for lost profits damages, and requiring that the response "shall amount to a meaningful articulation of the bases for [plaintiff's] contention that it is entitled to such damages" and include "a narrative explanation as to how the information contained in [certain documents referenced in a supplemental response to the interrogatory] shed light on [plaintiff's] contention that it is entitled to lost profits damages"); s*ee also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1371 (Fed. Cir. 2021) (rejecting Plaintiff's "narrow reading" of Rule 26 only requiring its damages theories be developed in the expert's report and affirming the holding that Plaintiff was required to disclose royalty rates and the extrinsic evidence relied on to support the applicable royalty rates that Plaintiff intended to rely on at trial).

In light of the requirements discussed above and upon evaluation of TQ Delta's Damages Disclosures, the Special Master finds that TQ Delta's Damages Disclosures are deficient and must be supplemented in some respects as identified below.

### 1. TQ Delta Must Supplement Its Damages Disclosures to Provide an Initial Computation of Damages.

TQ Delta has failed to sufficiently disclose to DISH its Rule 26(a)(1)(A)(iii) computation of damages because it failed to provide an initial computation for each category of damages that TQ Delta seeks. Nowhere in TQ Delta's Damages Disclosures does it set forth an initial computation of its damages. Rather, TQ Delta only vaguely discloses that it "intends to seek damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, along with treble damages and attorneys' fees" and further that "[i]n no event should the damages to which TQ Delta is entitled amount to less than a reasonable royalty." R. 26 Discl. at 7; Rog. 1 Resp. at 14. TQ Delta must supplement its Damages Disclosures to provide an initial computation of its damages in accordance with Rule 26(a)(1)(A)(iii). *See Koninklijke Philips Elecs.*, 2017 WL 4764670, at *2; *Brandywine Commc'ns Techs., LLC*, 2012 WL 5504036, at *2; *Silicon Knights, Inc. v. Epic Games, Inc.*, 2012 WL 1596722, at *4 (E.D.N.C. May 7, 2012) ("Disclosing damages-related documents alone, without disclosing a computation based on such documents does not satisfy a party's Rule 26(a)(1)(A)(iii) obligation.").

The Special Master does recognize that a party's damages are dependent upon expert opinion to some extent. See *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1. Thus, the Special Master neither expects nor requires TQ Delta to set forth a *final* calculation of its damages at this stage of the action. Indeed, the Special Master anticipates that TQ Delta's damages calculation will be updated, further refined and/or supplemented by an expert report and testimony consistent with the applicable deadlines of the scheduling order. However, TQ Delta cannot simply punt its obligation under Rule 26 to adequately disclose its computation of damages. *See Stemrich*, 2013 WL 4080310, *3 (relying

10

upon Rule 26's "explicit[ ] contemplate[ion] [of] such a procedure by placing an affirmative obligation for a party to initially disclose information available to [it] and subsequently update the information as it becomes available" and rejecting Plaintiff's argument that a more specific disclosure will be provided following a review of the case by Plaintiffs' expert).

In other words, "[Rule 26]" does not require a full exposition of the type required at trial or in an expert report but it does expressly require an initial computation and disclosure of evidence that will be relied on to the full extent the patent plaintiff could or should know of it in the exercise of the type of pre-suit diligence required by Rule 11." *Brandywine Commc'ns Techs., LLC*, 2012 WL 5504036, at *2. TQ Delta's Damages Disclosures must be supplemented to meet this standard.

### 2. TQ Delta Must Supplement Its Damages Disclosures to Disclose the Factual Bases Upon Which Its Damages Are Based.

TQ Delta's Damages Disclosures also are deficient under Rule 26 because they do not disclose the factual bases upon which TQ Delta's damages are based.[5] Despite TQ Delta's argument that it has set forth "more than nine pages of legal and factual bases" in support of its damages (Ans. Br. at 1), a significant portion of the nine pages explain only TQ Delta's legal bases for alleged damages and notably absent are the requisite factual bases on which the alleged damages are based. For example, TQ Delta discloses that "[i]n no event should the damages to which TQ Delta [is] entitled amount to less than a reasonable royalty[]" and that it will rely upon the Analytical Method and the Hypothetical Negotiation Approach to calculate a reasonable royalty. R. 26 Discl. at 7-9; Rog. 1 Resp. at 14-16. However, despite the legal explanations that

---

[5] TQ Delta's failure to disclose such factual bases similarly renders its Third Supplemental Response deficient. *See* Interrogatory No. 1 (requesting the "full factual . . . bases for TQ Delta's damages claims against DISH, including but not limited to: . . . (2) the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount, if any;").

11

TQ Delta provides for both the Analytical Method and the Hypothetical Negotiation Approach, TQ Delta does not provide any of the necessary factual bases that would support applying these methods to calculate a reasonable royalty, including, but not limited to, identifying the royalty base, the appropriate royalty rate, identifying any relevant convoyed or collateral sales that are or may be incorporated in the damages analysis, and identifying any relevant recurring or subscription revenue that is or may be incorporated in the damages analysis. Such information is necessary for DISH to understand and evaluate TQ Delta's alleged damages and should be disclosed to DISH. *See MLC Intellectual Property, LLC*, 2021 WL 3778405, at *9 (holding that "the district court was within its discretion in determining that, though MLC was not required to disclose its expert opinions during fact discovery, it was still required to disclose (1) its view that Hynix and Toshiba license agreements reflect a 0.25% royalty rate and (2) the extrinsic evidence Mr. Milani relied on to support that view in response to Micron's reasonable requests for all facts, evidence, and testimony regarding any applicable royalty that MLS intended to rely on at trial.");[6] *Brandywine Commc'ns Techs.*, 2012 WL 5503036 at *2 (requiring that a Rule 26(a)(1)(A)(iii) computation include a reasonable royalty rate as to each accused product).

Similarly, although TQ Delta relies on at least some of the *Georgia-Pacific* factors in its discussion of the Hypothetical Negotiation Approach, it does not include any factual bases to support the application of those factors. R. 26 Discl. at 8-9; Rog. 1 Resp. at 15-16. Thus, TQ Delta's Damages Disclosures fail to meet the requirements of Rule 26 and also fail to meet the express requirements of Interrogatory No. 1 ("describe the full factual and legal bases for TQ

---

[6] Although TQ Delta attempts to distinguish the *MLC Intellectual Property, LLC* decision factually, such factual differences do not alter the court's finding in *MLC Intellectual Property, LLC* that information concerning the applicable royalty rate should have been disclosed under Plaintiff's Rule 26 disclosures. (Ans. Br. at 2).

12

Delta's damages claims against DISH, including . . . (6) all factors, including those described under *Georgia-Pacific Corp. v. U.S Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), that TQ Delta contends support its damages claims **and a description of how each such factor allegedly supports its claims**;")(emphasis added)). *See Brandywine Commc'ns Tech.*, 2012 WL 5504036, *2 ("If a reasonable royalty is claimed, and if the patent plaintiff is going to rely on any of the *Georgia Pacific* factors . . . , then the patent plaintiff must list each such asserted *Georgia Pacific* factor and identify all evidence it [will] rely on for that factor, save and only except for such evidence as it could not be reasonably expected to possess (and does not possess) at the outset of the litigation.").

Similarly, TQ Delta's Damages Disclosures provide that "TQ Delta may pursue one or more of the following three methodologies for assessing patent damages: Income Approach, Market Approach, and Cost Approach . . ." and provide detailed legal explanations for those methodologies. R. 26 Discl. at 10-14; Rog. 1 Resp. at 17-21. However, TQ Delta's Damages Disclosures do not provide sufficient factual bases to facilitate any assessment of its alleged damages under any of those three identified methodologies.

Moreover, TQ Delta's Damages Disclosures provide that, under the Market Approach, it may "rely upon a same or 'comparable' license or settlement agreement(s)[.]" R. 26 Discl. at 12; Rog. 1 Resp. at 19. TQ Delta identifies two specific "potentially comparable benchmark[s]" including (1) TiVO's offer to license as posted on its website; and (2) TiVO's settlement with DISH in April 2011. R. 26 Discl. at 20-21; Rog. 1 Resp. at 19-20. However, beyond those two specific licenses, TQ Delta only vaguely identifies additional "licenses that may encompass the asserted patents which may be determined" through certain produced documents and more than twenty-five licenses agreements produced by DISH identified only by bates-numbers. *Id.* Despite

13

its references to those documents, TQ Delta has not taken a position on whether the additional licenses identified are considered potentially comparable. To the extent TQ Delta has any additional clarity as to its position of whether the additional licenses it references are "comparable benchmarks," TQ Delta should disclose that information to DISH. In addition to identifying potential comparable licenses, TQ Delta should provide the initial factual bases that may support any comparability analysis.

Additionally, TQ Delta's objection to Interrogatory No. 1 on the basis that it seeks expert testimony and TQ Delta's claims that it need not disclose the factual bases of its damages claimed until expert discovery are not entirely valid and sufficient. Specifically, TQ Delta objects on the basis that "the request for 'the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount' calls for the subject of expert opinion[.]" Rog. 1 Resp. at 13; *see also id.* at 19 ("[f]urther investigation of available information as to its applicability to the Income Approach in this case shall be based on analysis that requires expert opinion testimony and is accordingly within the scope and purview of expert discovery."); *id.* at 21 ("[f]urther investigation of available information on the applicability of the license agreements, settlement agreements and offers to license as a valid metric for the Market Approach in this case, shall be based on analysis that requires expert opinion testimony and is accordingly within the scope and purview of expert testimony."); and *id.* at 21 ("[i]nvestigation of available information on the applicability of the Cost Approach shall be based on analysis that requires expert testimony and is accordingly within the scope and purview of expert discovery."). TQ Delta must disclose the factual bases that support its damages contentions and cannot simply respond that such discovery is the subject of expert opinion. *See In re Cyclobenzaprine Hydrochloride*

*Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1; *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) (finding interrogatory response summarized as "wait until we serve our expert report" to be "plainly insufficient" and granting motion to compel further responses to damages interrogatories, including disclosure of facts upon which plaintiff sought a reasonable royalty).

### 3. TQ Delta Must Supplement Its Damages Disclosures to Identify Any Documents It Intends to Rely on in Support of Its Damages Claim.

TQ Delta's Damages Disclosures also are deficient to the extent that TQ Delta does not identify for DISH the documents that TQ Delta intends to rely on to support its claim for damages. For example, there are references throughout TQ Delta's Damages Disclosures where TQ Delta refers to its reliance on evidence without specifically identifying *any* documents. *See* Rog. 1 Resp. at 18 ("While discovery is ongoing, financial information (e.g., units, revenues, costs and margins) and other information may be used to inform an expert opinion under this approach."). This broad reference to the type of information that TQ Delta may rely upon in support of its damages claims is insufficient. TQ Delta should specifically identify the documents that it purports to rely on to support its damages claims. *See GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, Civil Action No. 14-878-LPS-CJB, D.I. 101 at 1-2 (D. Del. Jan. 28, 2016).

Also, TQ Delta's Damages Disclosures contain a limited number of references to evidence that TQ Delta identifies in support of its claims for damages. However, it appears that such references are incomplete and only serve as examples of such documents as opposed to a complete listing.[7] In such instances, and to the extent that TQ Delta can do so at this time, TQ Delta should

---

[7] For example, TQ Delta discloses that it may rely on "Defendant's financial performance associated with sale/rental/lease/deployment and/or other benefits or consideration derived directly or indirectly from the Accused Products and/or the services employing the same. Examples of such documents for [DISH] include (but not limited to) those with the following production Bates: DISH00032859, DISH00027928-29568, DISH00021489-23012, and

15

provide a complete listing of the documents and/or other evidence it contends supports it claims for damages. Otherwise, TQ Delta should supplement its Damages Disclosures as soon as it is able to do so in accordance with its duty to supplement its disclosures and discovery responses as required by Rule 26.

## V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion is GRANTED. Within fourteen (14) days of this Order, TQ Delta shall:

(1) supplement its Federal Rule of Civil Procedure 26(a)(1)(A)(iii) disclosure to provide a computation of each category of damages claimed and also to produce or otherwise make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(2) supplement its response to Interrogatory No. 1 to include an identification of what TQ Delta contends constitutes the royalty base, the appropriate royalty rate, comparable licenses, identify any relevant convoyed or collateral sales to be incorporated in the damages analysis, identify any relevant recurring or subscription revenue to be incorporated in the damages analysis, and identify any documents that TQ Delta will rely upon to support its damages allegations.

It should be understood by all that TQ Delta may specify or make clear that its damages computation is initial or preliminary based on the information reasonably available to it at the current time and that its damages computation, the factual bases on which it is based, and the

---

DISH00029595-29664." Rog. 1 Resp. at 16; *see also id.* at 17 ("[a]n example of documents showing units deployed, thus implying an approximate date of first sale for [DISH] includes (but not limited to) the document bearing production Bates: DISH00032859.").

documents and/or other evidence identified in support of its claimed damages, may be further refined, updated and supplemented as discovery continues and/or by expert report consistent with Rule 26.

ENTERED this 19th day of October 2021.

_____
Gregory B. Williams (#4195)
Special Master

SO ORDERED this _____ day of _____, 2021.

_____
UNITED STATES DISTRICT COURT JUDGE