IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 15-614-RGA |
| v. | : | |
| | : | |
| DISH NETWORK CORPORATION, *et al.*, | : | |
| Defendants. | : | |

**SPECIAL MASTER ORDER #14 – RULING ON DISH DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT THE SCOPE OF PLAINTIFF TQ DELTA'S RULE 30(b)(6) DEPOSITION NOTICE TOPIC NOS. 10, 12, 19-24, 26 AND 34**

I.  **INTRODUCTION**

Pending before the Special Master is Defendants DISH Network Corporation, DISH Network L.L.C., DISH DBS Corporation, Echostar Corporation, and DISH Technologies L.L.C. (collectively "DISH") motion for a protective order requiring Plaintiff TQ Delta, LLC ("TQ Delta") to limit the scope of its Rule 30(b)(6) Deposition Notice Topic Nos. 10, 12, 19-24, 26, and 34 to extend only to marketing efforts directed to the use of MoCA technology in the accused products from 2014 to the latest expiration date of the patents-in-suit. (D.I. 387) (the "Motion").[1] On February 1, 2022, TQ Delta opposed the Motion by submitting its answering brief ("Answering Brief" or "Ans. Br.") and asserting that the marketing and other information sought by Topic Nos. 10, 12, 19-24, 26, and 34 is "plainly relevant to assess demand for and importance of the patented

---

[1] In support of the Motion, DISH lodged upon the Special Master an Opening Letter Brief dated January 25, 2022 ("Opening Brief" or "Op. Br.").

features." (Ans. Br. at 1). Having considered the written submissions of the parties, and for the reasons set forth more fully below, the Special Master hereby orders that the Motion is DENIED.

## II.     BACKGROUND AND RELEVANT PROCEDURAL POSTURE

Plaintiff initiated this action on July 17, 2015 alleging that DISH infringed seven (7) of TQ Delta's patents.[2] (D.I. 1). On October 28, 2016, TQ Delta served DISH with its First Rule 30(b)(6) Deposition Notice ("First Rule 30(b)(6) Deposition Notice") which included Topic Nos. 10, 12, 19-24, 26, and 34 (collectively, the "Marketing Topics"). (Op. Br., Ex. A). Specifically, the Marketing Topics request DISH to produce a corporate designee to testify as to the following:

> 10. The actual, expected and/or contemplated monetary benefits (e.g., increased market size, increased market share, increased revenue, increase in average revenue per customer, increase in bundling, reduced churn, reduced cost) and non-monetary benefits (e.g., increased customer satisfaction) associated with the sale, rental, provision and/or use of the Accused MoCA Products.
>
> 12. Separately for each Accused MoCA Product and/or collectively for the Accused MoCA Products, any and all market, unit, revenue, cost, and profit projections and forecasts from 2009 to the present.
>
> 19. Competition in the U.S. market relating to MoCA and/or the Accused MoCA Products, and/or MoCA Functionality from 2009 to the present, including all competitors and Defendant's efforts to monitor any such competition. This topic includes Defendant's knowledge and monitoring of competition relating to products having MoCA Functionality, including the identity of Defendant's competitors that provide services or products for distribution of audio/video content within the home using networked gateways, STBs, and/or STBs with DVR capability from 2007 to the present.
>
> 20. All strategic plans, business plans, competitive reviews or analyses, and reports to the board of directors or other management personnel, that concern or refer to the Accused MoCA Products or the market for such products.

---

[2] On September 9, 2015, TQ Delta filed a First Amended Complaint for Patent Infringement alleging infringement of an eighth patent that issued after TQ Delta filed its original Complaint. (D.I. 7).

21. The identification, location, and substantive explanation of all periodic reports prepared by or sent to Defendant's managerial personnel or board of directors that discuss the market for services or products for distribution of audio/video content within the home using networked gateways, STBs, and/or STBs with DVR-capability, MoCA Products (including the possibility of Defendant introducing Accused MoCA Products), actual or contemplated competition from competitive MoCA Products and/or alternative products, if any, and/or the Accused MoCA Products.

22. Any third party or other market studies, market analyses relating to or involving the distribution of audio/video content within the customer's premises over coaxial cable.

23. Any internally developed or externally sourced customer or consumer surveys relating to or involving multi-room DVR capability within the customer's premises.

24. An identification of all television and other advertising and promotional efforts relating to MoCA Products or the Accused MoCA Products (including whole home DVR services) including but not limited to direct and/or indirect customers or potential customers.

26. The U.S. market share and/or regions within the U.S. if applicable, in units, dollars, or any other manner known, understood, analyzed, projected or estimated for Defendant and any and all competing provider(s) of audio/video content and internet data to a customer's premise, from 2007 to the present.

34. All strategic plans, business plans, competitive reviews or analyses, and reports to the board of directors or other management personnel, that concern or refer to the Accused MoCA Products or the market for such products.

(Op. Br., Ex. A).

On December 20, 2016, the Court stayed this litigation pending resolution of *Inter Partes Reviews* ("IPRs") relating to the patents-in-suit. (D.I. 214). On April 13, 2021, the Court lifted the stay and implemented an amended case schedule. (D.I. 238).[3] Following the stay, on

---

[3] Following the IPRs, only two patents remain at issue in this action – the '158 and '243 patents.

3

December 6, 2021, TQ Delta served upon DISH a Third Amended First Rule 30(b)(6) Notice with identical Marketing Topics as the First Rule 30(b)(6) Deposition Notice. (Ans. Br., Ex. 1). On December 15, 2021, DISH served upon TQ Delta its Objections and Responses to Plaintiff's Third Amended First Rule 30(b)(6) Deposition Notice. (Op. Br., Ex. C). Specifically, DISH made the following objections (among others) to the Marketing Topics:

- The Marketing Topics are "unduly burdensome, at least to the extent that [they] seek[ ] information that can be ascertained from documents or obtained from less expensive or less burdensome means of discovery, such as an interrogatory." (*See* Op. Br., Ex. C. (Objections to Topic Nos. 10, 12, 19, 20, 22, 23, 24, and 26)).
- The Marketing Topics are "not limited to a reasonable time period." (*See id.* (Objections to Topic Nos. 10, 12, 22, 23, 24, 34)).
- The Marketing Topics are "not limited to the damages period for the asserted patents." (*See id.* (Objections to Topic Nos. 12 and 19)).
- "Overbroad, unduly burdensome, and not relevant to any claims or defenses." (*See id.* (Objection to Topic No. 21))

(*Id.* at 14-16, 21-27, 32).[4]

Despite initially engaging with TQ Delta regarding the identity of the corporate representative who might be designated for each of the Marketing Topics (Op. Br., Ex. E at 2-3), on January 7, 2022, DISH indicated to TQ Delta that it would stand on its objections that the Marketing Topics were "overbroad" and requested that DISH "specify what marketing information it seeks" before DISH identified a corporate designee. (*Id.*, Ex. F at 3). The parties continued to

---

[4] In addition to these objections, DISH also objected to certain of the Marketing Topics on more specific bases. (*Id.*).

meet and confer regarding the scope of the Marketing Topics but were unable to reach an agreement. (*Id.* at 1-2).

Accordingly, DISH moved this Court for a protective order to narrow the scope of the Marketing Topics. Specifically, DISH requests the Court to limit the scope of the Marketing Topics because they are "unbounded as to time, products, type of marketing and therefore are unduly burdensome and disproportionate to the needs of the case." (Op. Br. at 1). Given the alleged breadth of the Marketing Topics, DISH contends that "it is simply not feasible for [it] to present a knowledgeable witness on the overbroad scope of [TQ Delta's] [Marketing Topics]." (*Id.*). DISH requests that the Court limit the Marketing Topics in two ways: (1) in time from the issuance of the first patent-in-suit in 2014 to the expiration of the patents-in-suit (Op. Br. at 2); and (2) to only the MoCA functionality of the Accused Products. (Op. Br. at 2-3). Alternatively, if the Court does not limit the Marketing Topics, DISH requests that the Court shift to TQ Delta the costs and fees that DISH incurs providing testimony in response to the Marketing Topics. (Op. Br. at 3).

TQ Delta opposes the Motion contending that the Marketing Topics are relevant to "the demand and the market for the Accused MoCA Products and alleged non-infringing alternatives." (Ans. Br. at 3). TQ Delta requests the Court to reject the proposed limits that DISH seeks to impose on the Marketing Topics. Specifically, TQ Delta argues that limiting the time of the Marketing Topics to date back no farther than 2014 would improperly impede upon TQ Delta's ability to evaluate its damages under a Hypothetical Negotiation Approach because that evaluation requires consideration of the history and experience of both parties. (Ans. Br. at 2). TQ Delta also argues that limiting the Marketing Topics to only the MoCA functionality of the Accused Products would improperly limit discovery to DISH's marketing of one technology and eliminate discovery

5

of any other features and products that DISH may assert are non-infringing alternatives to the Accused MoCA Products. (*Id.*). TQ Delta contends that eliminating discovery of such non-infringing alternatives would be improper because DISH relies upon such alternatives in its damages contentions. (Ans. Br. at 2-3; *Id.*, Ex. 5 at 30).

## III.   LEGAL STANDARD

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. Pro. 26(b)(1).

The Third Circuit "employs a liberal discovery standard," *Westchester Fire Ins. Co. v. Household Intl'l, Inc.*, 167 F. Appx 895, 899 (3d Cir. 2006), and recognizes that "the federal rules allow broad and liberal discovery." *Pacetti by Pacetti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Similarly, the District of Delaware has "'construed liberally and with common sense' the requirement of relevancy, rather than measure relevancy by the precise issues framed by the pleadings or limited by other concepts of narrow legalisms. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Rohm & Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117, at *12 (D. Del. Sept. 14, 1990); *see also See Finjan, Inc. v. Rapid7, Inc.*, 2020 WL 5045186, at *2 (D. Del. Aug. 7, 2020) ("Relevance is liberally construed to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any

issue that is or may be in the case." (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Pursuant to Federal Rule of Civil Procedure 26(c), a party may move the Court for a protective order in order to seal, limit, or otherwise restrict discovery. Rule 26(c) provides, in relevant part, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c)(1). The "burden of persuasion [is] on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). The party moving for a protective order "must show good cause by demonstrating a particular need for protection." *Id.* Establishing "good cause" requires the movant to "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) (citations omitted).

## IV.   DISCUSSION

DISH's Motion seeks an Order limiting the Marketing Topics in time from 2014 to the expiration of the patents-in-suit and in scope to only the MoCA technology of the Accused Products. In deciding the Motion, the Special Master must determine whether DISH's proposed limits would deprive TQ Delta of discovery relevant to the parties' claims and defenses. If the information that DISH seeks to exclude from discovery is relevant to the parties' claims and defenses, the Special Master must examine whether DISH has good cause for a protective order to prevent discovery of such information. Fed.R.Civ.P. 26(c)(1); Cipollone, 785 F.2d at 1121.

Having carefully reviewed and evaluated the Marketing Topics and the parties' respective briefing, the Special Master finds that DISH's request to limit the Marketing Topics in time from

2014 to the expiration of the patents-in-suit and to limit the scope to only the MoCA technology of the Accused Products would deprive TQ Delta of discovery of information relevant to the parties' claims and defenses in this action. The Special Master also finds that DISH has failed to establish good cause for a protective order. Accordingly, DISH's Motion is denied.

### A. Limiting The Marketing Topics In Time From 2014 To The Expiration Of The Patents-In-Suit And In Scope To The MoCA Technology Of The Accused Products Would Deprive TQ Delta Of Information Relevant To The Parties' Claims and Defenses.

The Marketing Topics seek two categories of information (1) the marketing of the Accused MoCA Products and/or the MoCA functionality of the Accused Products (Op. Br. Ex. B (Topic Nos. 10, 12, 20, 23-24, 26, and 34)); and (2) DISH's competitive analysis of its competitors as it relates to the market for the Alleged Products providing distribution of audio, video or data across an in-home network. (*Id.* (Topic Nos. 19, 21, 22)). In determining whether the discovery sought by TQ Delta under the Marketing Topics is relevant, the Special Master recognizes that Courts in this District construe the concept of relevancy "liberally and with common sense." *Rohm & Haas Co.*, 1990 U.S. Dist. LEXIS 20117, at *12. "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Id.*

First, the Special Master evaluates DISH's request to narrow the time period of the Marketing Topics from 2014 to the expiration of the patents-in-suit. DISH asserts that the Marketing Topics seeking information dating back to 2009 or that are unrestrained as to time "are plainly disproportionate to the needs of this case." (Op. Br. at 2). DISH argues that the first patent-in-suit did not issue until 2014 and, therefore, information prior to 2014 is not relevant to this action. (*Id.*). TQ Delta disagrees, arguing that the information pre-dating the issuance of the

patents-in-suit is relevant to its damages under a hypothetical negotiation approach. (Ans. Br. at 2).

In a patent infringement action, "[u]pon finding for the plaintiff[,] the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The reasonable royalty theory allows damages in the amount of a reasonable royalty to which the infringer and the patent holder hypothetically would have agreed to at the time that the infringement began. *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed.Cir.1993). Courts often rely upon the well-established *Georgia-Pacific* factors to determine the amount of a reasonable royalty for a patent license which, relevant here, may include consideration of: "the established profitability of the product made under the patent; its commercial success; and its current popularity"; and "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Thus, the Special Master agrees with TQ Delta that information pre-dating the issue of the first patent-in-suit is relevant to TQ Delta's damages. *See Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, 2013 WL 2419934, at *3 (C.D. Ill. June 3, 2013) (holding that "technical, sales, and marketing information from before the issuance date is also relevant to the reasonable royalty method of measuring damages."). DISH specifically acknowledges that the first products to use MoCA were released in 2005. (Ans. Br. at 3, n.4). Therefore, the Marketing Topics requesting information dating back to 2007 or 2009 may lead to information relevant to damages in this action. Given that the Marketing Topics seek information from nearly fifteen years ago, it may be the case that such information dating back to 2007 or 2009 is not "known or reasonably available"

9

to DISH. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization.") However, the Special Master will not expressly limit the Marketing Topics in time to exclude such information predating 2014. Accordingly, the Special Master agrees with TQ Delta that "DISH's review of the importance of multiroom DVR functionality and the use of MoCA by [DISH's] competitors in advance of its MoCA-enabled Accused Products" and "the facts surrounding [DISH's] investigation and need to adopt whole home DVR functionality into its product line" are relevant to the parties' claims and defenses. Thus, DISH's request to limit the time of the Marketing Topics from 2014 to the expiration of the patents-in-suit is denied.

Next, the Special Master evaluates DISH's request to narrow the scope of the Marketing Topics to only MoCA technology of the Alleged Products. DISH asserts that the Marketing Topics are overbroad because they seek "information that has no connection to [TQ Delta's] infringement allegations." (Op. Br. at 2). For example, DISH argues that Topic No. 24 is "unreasonably broad because it captures all marketing that tangentially references DISH's set-top boxes that permit viewers to receive programming from DISH's satellites" and would permit testimony regarding the "marketing of premium content (like HBO) that can be viewed using DISH's set-top boxes" and include "direct-mail advertising to persons that have never ordered a DISH product or service." (Op. Br. at 2-3). DISH also contends the Marketing Topics seek information outside the scope of the asserted claims and accused products, and refer to Topic Nos. 22 and 23, which according to DISH would require it to "prepare a witness to speak to a vast universe of television projects, far beyond the limited number of products accused of infringement in this case." (Op. Br. at 3). DISH further contends that "the asserted patent claims are limited to specific operations for scrambling the phase characteristics of carrier signals and transmitting those signals" and does not encompass

10

every aspect of the MoCA standard. Thus, according to DISH, limiting the Marketing Topics to all MoCA functionality would be a fair compromise. (*Id.*). On the other hand, TQ Delta asserts that limiting the Marketing Topics to only the MoCA functionality of the Accused Products would prohibit discovery of "the universe of other features and products that DISH may assert are of great value and/or are non-infringing alternatives to the Accused MoCA Products." (Ans. Br. at 2).

Considering both parties' arguments, the Special Master finds that DISH's proposed limitation on the scope of the Marketing Topics to only the MoCA functionality of the Accused Products would improperly limit TQ Delta's discovery of potentially relevant information. Specifically, DISH takes positions in this litigation that puts into issue its use of other features of the Accused Products, as well as non-infringing alternatives. *See* Ans. Br., Ex. 5 at 30 (DISH identifies "multiple non-infringing wired and wireless alternative technologies were commercially available alternatives or substitutes to the accused MoCA functionality[.]"), and 31 ("DISH's Accused Products have been successful due to numerous factors unrelated to the Asserted Patents[.]"). Because DISH has asserted that its Accused Products have been successful due to non-infringing alternatives or its use of non-infringing wired and wireless alternative technologies that were commercially available alternatives to the accused MoCA functionality, information concerning those non-infringing alternatives or non-infringing wired and wireless alternative technologies is relevant to the claims and defenses of this action. Accordingly, imposing a limit on the scope of the Marketing Topics to allow discovery of only the MoCA functionality of the Accused Products would wrongfully deny TQ Delta discovery of information that may be relevant to the claims and defenses of the parties in this action.

### B. DISH Has Failed To Establish "Good Cause" For A Protective Order.

Again, a party requesting a protective order has the burden to demonstrate "good cause" by "specifically demonstrat[ing] [ ] that disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co.,* 56 F.3d at 483. "Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Id.*

DISH asserts that the Marketing Topics are "overbroad, unduly burdensome and seek information irrelevant to any claim or defense." (Op. Br. at 2). As a result of such, DISH contends that it "is simply not feasible for DISH to present a knowledgeable witness." (*Id.* at 1). As discussed above, the Special Master has already determined that the information sought by the Marketing Topics are relevant to the parties' claims and defenses and rejected DISH's arguments that the Marketing Topics are overbroad. The Special Master also finds that DISH has failed to demonstrate that producing a witness to testify on the Marketing Topics would be unduly burdensome or would cause DISH a "clearly defined and serious injury."

DISH cites to and relies upon *Preservations Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965163, at *5 (C.D. Cal. Oct. 19, 2020) to support its position that producing a Rule 30(b)(6) witness on the Marketing Topics would be "infeasible." (Op. Br. at 3). However, DISH's reliance on *Preservation Techs.* is not persuasive because, in that case, the Court's issuance of a protective order was based upon MindGeek's allegations of "particular burdens that it would face in preparing a witness for each topic" and MindGeek "adequately set[ting] forth the burden that preparing for the [Rule] 30(b)(6) deposition would entail." *Id.*

Here, DISH only makes the broad allegation that the Marketing Topics would "leave DISH with the impossible task of preparing a witness to speak to all marketing materials generated for any product (DISH or otherwise) over a roughly 15-year period simply because the product is

12

alleged to implement MoCA." (Op. Br. at 3). Beyond this broad assertion, DISH fails to specifically identify how any of the Marketing Topics would be unduly burdensome with regard to DISH's request to limit the Marketing Topics in time. With regard to DISH's request to limit the Marketing Topics in scope, DISH at least attempts to meet its burden regarding certain of the Marketing Topics. (Op. Br. at 2-3 (specifically referencing Topic Nos. 22, 23 and 24 as discussed *supra*)). However, these arguments each go to the breadth of certain Marketing Topics, not the burden that DISH "would face in preparing a witness for each topic."[5] Thus, the Special Master finds that DISH has failed to demonstrate good cause that would entitle it to a protective order. *See Indep. Living Ctr. Of So. Cal. v. City of Los Angeles*, 296 F.R.D. 632, 637 (C.D. Cal. 2013) (rejecting "generalized objections of burdensomeness" when the movant merely labeled the requested discovery burdensome and cited the number of requests without advancing specific arguments).[6] Although denying DISH's request for a protective order, the Special Master again recognizes that, under Rule 30(b)(6), DISH need only designate a witness to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

---

[5] The Special Master has further considered DISH's objections set forth in its Objections and Responses to Plaintiff's Third Amended First Rule 30(b)(6) Deposition Notice. (Op. Br., Ex. C). Specifically, DISH objected to certain of the requests on the basis that they were "unduly burdensome" as a result of the information sought by each Marketing Topic. (*Id.*, Objections to Topic Nos. 10, 12, 19, 30, 21, 22, 23, and 34.) The Special Master again finds that these objections do not demonstrate the burden DISH would suffer if required to produce a corporate designee to testify on the Market Topics.

[6] DISH also cites *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) for the proposition that "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." The facts in *Reed* are distinguishable from the present facts because in *Reed*, the Rule 30(b)(6) indicated that the listed topics were not exclusive, noting that the areas of inquiry would "include[e], but not [be] limited to" to the topics set forth. Here, each of the topics that DISH needs to produce a corporate designee are clearly set forth in the Third Amended First Rule 30(b)(6) Notice.

### C. DISH's Alternative Request For Expenses In Providing Testimony On The Marketing Topics Is Denied.

As an alternative means to relief, DISH requests the Court to require TQ Delta to pay DISH's costs and fees incurred in providing testimony on the Marketing Topics. Federal Rule of Civil Procedure 26(c)(3) permits an award of expenses in accordance with Federal Rule of Civil Procedure 37(a)(5). However, for the reasons set forth above, DISH has failed to specifically demonstrate how producing a corporate designee to testify about information known or reasonably available to the organization would be unduly burdensome under the circumstances. Accordingly, DISH's request for fee shifting is denied.

### V. CONCLUSION

For all of the foregoing reasons, IT IS HEREBY ORDERED that DISH's request for a protective order requiring TQ Delta to limit the scope of its Rule 30(b)(6) Deposition Notice Topics Nos. 10, 12, 19-24, 26, and 34 to extend only to marketing efforts directed to the use of MoCA technology in the accused products from 2014 to the latest expiration date of the patents-in-suit is DENIED.

ENTERED this 14th day of February, 2022.

_____
Gregory B. Williams (#4195)
Special Master

SO ORDERED this __8th__ day of ____March____, 2022.

_____
/s/ Richard G. Andrews
UNITED STATES DISTRICT COURT JUDGE