IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA LLC., | |
| Plaintiff, | |
| v. | Civil Action No. 15-614-GBW |
| DISH NETWORK CORPORATION, et al., | |
| Defendant. | |

## **MEMORANDUM OPINION**

November 16, 2023
Wilmington, Delaware

<br>

*[signature]*

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Plaintiff TQ Delta, LLC.'s ("TQ Delta") Motion for Leave to Supplement its damages expert reports. D.I. 526. Defendants DISH Network Corporation, et al. ("DISH"); Comcast Cable Communications Inc. ("Comcast"); CoxCom LLC and Cox Communications Inc. (collectively, "Cox"); Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (collectively, "Time Warner Cable"); and Verizon Services Corp. ("Verizon") (collectively, "Defendants") oppose. D.I. 541. For the reasons below, TQ Delta's Motion to Supplement is GRANTED.

## I. BACKGROUND

### a. Procedural History

TQ Delta filed several lawsuits against Defendants alleging infringement of U.S. Patent Nos. 8,718,158 ("the '158 patent") and 9,014,243 ("the '243 patent") (collectively the "Asserted Patents") by making, using, selling, offering to sell and/or importing products that implement communications standards established by the Multimedia over Coax Alliance ("Accused MoCA Products"). The adequacy of Plaintiffs' damages disclosures was a source of contention throughout fact discovery in the DISH action (No. 15-614-GBW), and first came before the Special Master[1] on October 1, 2021 through DISH's Motion to Compel Plaintiff TQ Delta to provide a more complete disclosure under Federal Rule of Civil Procedure 26(a)(l)(A)(iii) and a more complete response to DISH's Interrogatory No. 1 ("DISH's Damages Disclosure Motion"). No. 15-614-GBW, D.I. 317. The Special Master issued Special Master Order No. 6, which

---

[1] The Honorable Gregory B. Williams, as Special Master, prior to his appointment to the bench.

granted DISH's Damages Disclosure Motion and ordered TQ Delta to supplement its damages disclosures to include—among other things—the factual bases for TQ Delta's damages, and an identification of any documents that TQ Delta intended to use in support of its damages claims. No. 15-614-GBW, D.I. 326 ("SMO No. 6") at 11-14.

Pursuant to SMO No. 6, TQ Delta served its Second Supplemental Rule 26(a)(1) Initial Disclosures in December 2021. No. 15-614-GBW, D.I. 492 ("SMO No. 21") at 5. Fact discovery closed on February 25, 2022. D.I. 398. In May 2022, TQ Delta served its Third Supplemental Rule 26(a)(1) Initial Disclosures ("May Supplements"). SMO No. 21 at 5. The theories disclosed in the May Supplements were later incorporated into the Expert Report of TQ Delta's damages expert, Catherine M. Lawton (the "Lawton Report"). *Id.* On June 17, 2022, Defendants moved to strike and exclude TQ Delta's May Supplements and the Lawton Report on grounds that each relied on new and undisclosed evidence and damages theories. *Id.*

The Special Master issued SMO No. 21, granting Defendants' motion in part and striking "all portions of TQ Delta's damages theories in the May Supplements and/or the Lawton Report that rely upon or are based upon DirecTV's financial data (and more specifically, DirecTV's monthly service fees)." *Id.* at 27. In resolving Defendants' motion to strike, the Special Master applied the *Pennypack* factors and found that Defendants would be prejudiced if the evidence was not stricken, that the possibility of curing the prejudice was remote, that trial would be disrupted because expert discovery would have to be delayed, and that TQ Delta acted in bad faith and "may take lightly or not recognize the importance of its obligations to supplement in a timely manner." *Id.* at 23-25. Important here, the Special Master, in evaluating the importance of the stricken evidence, found that "the Lawton Report sets forth and contemplates alternative damages that are not subject to the Motion." The Special Master issued an order identifying

2

certain information that should be excluded from the Lawton Report. No. 15-611-GBW, D.I. 507 ("SMO No. 22").

Both parties objected to SMO No. 21. TQ Delta objected to SMO No. 21, in part, because "it was error not to allow targeted supplementation of the reports (e.g., to allow for use of Defendant-specific or timely-disclosed industry information (consistent with SMO #21) and cure the swiss cheese result of simply deleting text from the Reports." D.I. 509 at 10 (internal quotations omitted). The Court overruled all objections and noted that TQ Delta requested supplementation "in another shot at repairing the damage it has done to itself." D.I. 544 at 6. Still, the Court found that the question of whether the Court should grant TQ Delta leave to amend the Lawton Report "was an issue for another day." *Id.*

Following the Court's denial of the motion for reconsideration, TQ Delta sought leave from the Special Master to amend the Lawton Report. No. 15-611-GBW, D.I. 536 at 1. The Special Master declined TQ Delta's request, noting that only the Court had authority to grant such relief. *Id.* On September 12, 2022, TQ Delta filed a letter asking the Court for leave to supplement the Lawton Report, D.I. 528, and simultaneously served each Defendant with its proposed supplements. D.I. 541 at 1. When Defendants informed TQ Delta that it had served different versions of the proposed supplemental report to some of the Defendants, TQ Delta withdrew and, on September 15, 2022, re-filed its initial letter briefing seeking leave to amend the Lawton Report. *Id.* TQ Delta's letter seeking leave to amend the Lawton Report, D.I. 536, is pending before the Court.

### b. Proposed Supplemental Amendments to the Lawton Report

The Lawton Report disclosed, among other things, a twenty percent (20%) apportionment calculated using a $1.00 DirecTV-TiVo royalty rate as the numerator and a $5.00 DirecTV DVR

3

service fee as the denominator. D.I. 536 at 1. Additionally, for DISH and Cox, the Lawton Report relied on a $3.00 DirecTV "whole home" DVR service fee in another part of the formula as a proxy for Defendant-specific whole home DVR service fees. *Id.* For Comcast, Time-Warner Cable, and Verizon, the Lawton Report relied on Defendant-specific whole home DVR service fees. *Id.* In SMO No. 21, the Special Master determined that the $5.00 DirectTV service fee was not properly disclosed. *Id.* Thus, TQ Delta was ordered to strike the service fee from the Lawton Report. *Id.* As a result, TQ Delta was left without a calculable reasonable royalty rate in its matters against Defendants Dish and Cox. *Id.* As for its matters against Defendants Comcast, Time-Warner Cable, and Verizon, TQ Delta retained a theory based on a twenty percent (20%) apportionment theory, although that theory was weakened by SMO No. 21. *Id.*

TQ Delta seeks leave to replace the DirecTV service fees with information from the industry, or from specific defendants. *Id.* at 2. In particular, the proposed supplemental report uses a royalty rate of $4.98 allegedly from litigation between EchoStar and TiVo in place of the $5.00 DirectTV service fee used in Lawton's Report to calculate the twenty percent (20%) royalty rate. *Id.* Each supplemental report additionally discloses defendant-specific information for the whole home DVR service fee. *Id.* Finally, the proposed supplemental report also provides an alternative apportionment theory that multiplies the subject royalty rate by the ratio of Defendant-specific whole home DVR service fees to Defendant-specific standard DVR service fees. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 imposes a continuing obligation to timely supplement or correct discovery disclosures, requiring that "[a] party who has ... responded to an interrogatory ... must supplement or correct its disclosure or response: (A) in a timely manner if

4

the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(l)(A) & (B). "If a party fails to provide information or identify a witness [in the manner required by the Court under Rule 26], the party is not allowed to use that information or witness ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(l). Additionally, pursuant to Federal Rule of Civil Procedure 16(f), the court may impose sanctions (such as the exclusion of expert testimony), including those authorized by Rule 37(b)(2)(A), 12 if, *inter alia*, a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(l)(C); *see also Invista N. Am. S.A.R.L. v. M & G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 WL 3216109, at *2 (D. Del. June 25, 2013).

Although a court clearly has the authority to strike an expert report and/or exclude evidence (such as expert testimony) pursuant to Rule 37, it should be mindful that because "[t]he exclusion of critical evidence is an extreme sanction," such a remedy should not be imposed where an untimely or improper disclosure amounts to only a "slight deviation from pre-trial notice requirements" or occasions only "slight prejudice" to the movant. *In re Paoli R.R. YarPCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted). Instead, exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* at 792 (internal quotation marks and citations omitted); *see also Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. CIVA 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly

unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered"); *Praxair, Inc. v. ATML Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) (finding that although "the exclusion of otherwise admissible testimony because of a party's failure to meet a timing requirement is a harsh measure [that] should be avoided where possible[,]" it can be appropriate to prevent against the "flouting of discovery deadlines[,]" so as to maintain "fidelity to the constraints of Scheduling Orders and deadlines[, which] is critical to the Court's case management responsibilities") (internal quotation marks and citations omitted), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

In considering whether to exclude evidence relating to an untimely or otherwise improper disclosure, the United States Court of Appeals for the Third Circuit has directed district courts to weigh certain factors, known as "the *Pennypack* factors": (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

### III. DISCUSSION

The *Pennypack* factors weigh in favor of granting leave to amend.

#### a. Prejudice to Defendants.

The first Pennypack factor weighs against TQ Delta's motion to supplement. The proposed supplemental report seeks to introduce several new damage theories, which Lawton tellingly titles "alternative opinions." See, e.g., D.I. 536-5 at 48.

6

Defendants contend that they have already "incur[red] thousands of hours and hundreds of dollars in extra fees and expenses" and would be forced to incur additional fees and costs if TQ Delta is permitted to amend the Lawton Report. D.I. 541 at 3. The Court agrees. Defendants have had no opportunity to develop evidence or opinions responsive to Lawton's alternative opinions or new royalty fee theory. Thus, permitting TQ Delta to amend the Lawton Report at this time would require further discovery and cause Defendants to incur additional attorney and expert fees, all of which would prejudice Defendants.

### b. The Possibility of Curing Defendants' Prejudice and the Likelihood of Disruption to the Trial.

The second and third factors weigh heavily in favor of granting TQ Delta's motion to supplement. In fact, the case is currently stayed, and there is no pending trial date. Therefore, Defendants will have an opportunity to serve a rebuttal report and conduct any supplemental discovery without any disruption to a trial schedule. D.I. 522. *Insight Equity v. Transitions Optical, Inc.*, No. 10-cv-635 (RGA), 2016 U.S. Dist. LEXIS 164742, at *3-4 ("This is not a case where Plaintiff seeks a second bite at the apple on the eve of trial. Instead, trial is not scheduled for seven months. That is ample time to allow Plaintiff to prepare an alternative damages theory and for Defendant to test it."). Thus, the prejudice identified in factor one is curable, and there is no likelihood of disruption to trial.

### c. The Presence of Bad Faith or Willfulness in TQ Delta's Untimely Request.

The fourth factor asks if there was bad faith or willfulness on the part of TQ Delta. While TQ Delta has a "history of failing to comply with deadlines," its actions here are not so flagrant as to outweigh the other factors. D.I. 541 at 3. TQ Delta does not appear to have intentionally withheld the theories here, but instead sought to amend only after SMO 21 left the

7

Lawson Report with several holes. TQ Delta was diligent in seeking leave to amend and provided a proposed amended report with their motion. *See* D.I. 536, Ex. C at 1; Ex. E. Accordingly, while TQ Delta is on notice of its pattern of disclosure violations, the Court does not find sufficient bad faith in this particular case to outweigh the other factors.

### d. The Importance of the Supplement.

The fifth factor, the importance of the excluded evidence, weighs strongly in favor of granting TQ Delta's request to supplement. TQ Delta explains that, without supplementation, it will have "to rely on reports with significant holes in them." D.I. 536 at 4-5. "Perhaps the most important factor in this case is the critical nature of the evidence, and the consequences if permission to amend is denied." *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012). Making TQ Delta "unable to pursue damages" would "clearly influence the outcome of the case." *Id.* at 299-300. Accordingly, this factor weighs strongly in favor of granting leave to amend.

The balance of the *Pennypack* factors favors granting leave to amend.

### IV. CONCLUSION

For the above reasons, TQ Delta's Motion for Leave to Supplement its damages expert reports is granted. The Court will issue an Order consistent with this Memorandum Opinion.