# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC, | ) |
|         Plaintiff, | ) <br> ) <br> )   C.A. No. 15-cv-614-GBW |
| v. | ) <br> ) |
| DISH NETWORK CORPORATION, <br> DISH NETWORK LLC., <br> DISH DBS CORPORATION, <br> ECHOSTAR CORPORATION, and <br> ECHOSTAR TECHNOLOGIES, L.L.C., | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|         Defendants. | ) <br> ) |

**PLAINTIFF TQ DELTA'S RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF PATENT INELIGIBILITY**

Dated: October 16, 2024

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Rajendra A. Chiplunkar (admitted *pro hac vice*)
David Z. Petty (admitted *pro hac vice*)
**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com
*Counsel for Plaintiff TQ Delta, LLC*

Plaintiff TQ Delta, LLC submits its Response to Defendants' Concise Statement of Facts in Support of Their Motion for Summary Judgment of Patent Ineligibility.

1.  TQ Delta, LLC ("TQD") asserts infringement of U.S. Patent No. 9,014,243 ("the '243 Patent") (D.I. 134-3) and U.S. Patent No. 8,718,158 ("the '158 Patent") (D.I. 134-2), collectively the "Asserted Patents." **Undisputed.**

2.  The Asserted Patents share a common specification (D.I. 134-2, D.I. 134-3) that claims priority to a November 9, 1999 provisional application, U.S. Provisional Patent Application 60/164,134 (Ex. 13). D.I. 134-3 ('243 Patent) at 1:7-22; D.I. 134-2 ('158 Patent) at 1:8-24. **Undisputed.**

3.  For the '243 Patent, TQD asserts independent claims 1, 7, 13, and 20 and dependent claims 2, 8, 12, and 14-15 ("the '243 Asserted Claims"). **Undisputed.**

4.  For the '158 Patent, TQD asserts independent claim 1 and dependent claims 6 and 9 ("the '158 Asserted Claims") (the '243 and '158 Asserted Claims, collectively, the "Asserted Claims"). **Undisputed.**

5.  Multicarrier modulation systems (which transmit data between transceivers) were conventional in the field before the alleged priority date of the '158 and '243 Patents (the "Asserted Patents"). D.I. 134-3 ('243 Patent) at 1:26-59. **Undisputed** that the cited sections of the 243 Patent discuss a multicarrier communications system but **disputed** that the cited section otherwise supports the statement and that such systems with the components and functionalities in the combinations recited in the Asserted Claims were known or conventional before the priority date of the Asserted Patents.

6.  The specification of the Asserted Patents describes the common data transmission environment and expected operation of conventional multicarrier communications systems. D.I.

1

134-3 ('243 Patent) at 1:26-59. **Undisputed** that the cited section of the 243 Patent describes a "conventional multicarrier communications system" but **disputed** that all stated observations about the operation of such a system were "expected" or appreciated by those of ordinary skill in the art. Also, **disputed** that the Asserted Patents otherwise merely describe or claim a common data transmission environment or conventional multicarrier communication systems or support any argument that the inventions of the Asserted Claims were known or conventional before the priority date of the Asserted Patents.

7. Bit scramblers were conventional and well known for use in multicarrier communications systems at the time of the Asserted Patents. D.I. 134-3 ('243 Patent) at 1:48-64, 5:5-13. **Undisputed** that a bit scrambler is described in the cited section of the 243 Patent section and that bit scramblers were known before the priority date of the Asserted patents but **disputed** that the cited section otherwise supports the statement and that the inventions of the Asserted Claims that include a bit scrambler in combination with other elements were known or conventional before that date.

8. At the time of the Asserted Patents, it was known to use a bit scrambler to assure the randomness of the phases of the carrier signals. '243 Patent, 1:1:48-59; *id.* at 2:17-27. **Undisputed** that bit scramblers were known before the priority date of the Asserted patents but **disputed** that the cited section otherwise supports the statement and that the inventions of the Asserted Claims that include a bit scrambler in combination with the other recited elements were known or conventional before that date.

9. At the time of the Asserted Patents, modulating the same bit redundantly on two carrier signals was a well-known method in conventional multicarrier modulation to reduce errors. Ex. 13 ('134 Provisional) p. 2. **Undisputed** that at least one multicarrier modulation system that

modulated the same bit redundantly on two carrier signals was known but **disputed** that the cited section of the application otherwise supports the statement and that the inventions of the Asserted Claims that include modulating a bit on first and second carrier signals in combination with the other recited elements were known or conventional before the priority date of the Asserted Patents.

10. Named inventor Marcos Tzannes did not invent the principle that randomizing phase in a multicarrier system would improve PAR. Ex. 14 (2021-09-24 Tzannes Dep. Tr.) at 359:19-24. **Undisputed** that in response to the question "you didn't invent or discover the principle that randomizing phase in a multicarrier system would improve PAR, right?", Mr. Tzannes stated "No. I invented a specific type of phase scrambler" and also stated that a bit scrambler is not a phase scrambler; otherwise **disputed** that the cited testimony supports the statement. *See* Ex. E, Tzannes Dep. Tr. at 359:19-360:16.

11. It was known in the prior art at the time of the Asserted Patents that randomizing phase of carrier signals could reduce PAR, and conventional prior art devices did so. Ex. 14 (2021-09-24 Tzannes Dep. Tr.) at 359:8-24, 356:17-358:23. **Undisputed** that in response to the question "So the reason in the prior art that you used a bit scrambler was to create randomness in the data, so you would create randomness in the phases of the carriers of the multiple carrier transmission to avoid this PAR problem, fair?", Mr. Tzannes stated "I think that's kind of a fair summary" and also stated that a bit scrambler is not a phase scrambler; otherwise **disputed** that the cited testimony supports the statement. *See* Ex. E, Tzannes Dep. Tr. at 359:8-360:16. Also, **disputed** to the extent the statement intends to suggest that conventional prior art devices used a phase scrambler to randomize phases of carrier signals. Defendants have not come forward with any prior art devices that used a phase scrambler.

12. Conventional prior art devices in the prior art at the time of the Asserted Patents randomized the phase of carrier signals could reduce PAR. Ex. 14 (2021-09-24 Tzannes Dep. Tr.) at 359:8-24, 356:17-358:23. **Undisputed** that in response to the question "So the reason in the prior art that you used a bit scrambler was to create randomness in the data, so you would create randomness in the phases of the carriers of the multiple carrier transmission to avoid this PAR problem, fair?", Mr. Tzannes stated "I think that's kind of a fair summary" and also stated that a bit scrambler is not a phase scrambler; otherwise **disputed** that the cited testimony supports the statement. *See* Ex. E, Tzannes Dep. Tr. at 359:8-360:16. Also, **disputed** to the extent the statement suggests that conventional prior art devices used a phase scrambler to randomize phases of carrier signals. Defendants have not come forward with any prior art devices that used a phase scrambler.

13. At the time of the Asserted Patents, the use of bit scramblers was a conventional way known in the field for reducing PAR. Ex. 14 (2021-09-24 Tzannes Dep. Tr.) at 359:8-18, 356:17-358:23. **Undisputed** that in response to the question "So the reason in the prior art that you used a bit scrambler was to create randomness in the data, so you would create randomness in the phases of the carriers of the multiple carrier transmission to avoid this PAR problem, fair?", Mr. Tzannes stated "I think that's kind of a fair summary" and also stated that a bit scrambler is not a phase scrambler; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include a bit scrambler were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr. at 359:8-360:16.

14. At the time of the Asserted Patents, multicarrier modulator systems/techniques were well understood, routine, and conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 106:19-107:12, 220:13-16. **Undisputed** that Mr. Tzannes confirmed that multicarrier modulation systems existed before the Asserted Patents; otherwise

**disputed** that the cited testimony supports the statement and that the multicarrier modulation systems of the Asserted Claims existed before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 220:13-16.

15. At the time of the Asserted Patents, transmission of the same data on multiple carriers was well understood, routine, and conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 117:16-118:11. **Undisputed** that Mr. Tzannes confirmed that "before [his] invention . . . you could transmit the same data on multiple carriers"; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include transmitting a bit on first and second carriers were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 117:16-118:11.

16. At the time of the Asserted Patents, modulating the same data on more than one carrier was well understood, routine, and conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 223:25-224:4. **Undisputed** that Mr. Tzannes confirmed that "[m]odulating . . . the same data on more than one carrier existed before [his] patents"; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include modulating a bit on first and second carrier signals were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 223:25-224:4.

17. At the time of the Asserted Patents, transmission of a plurality of data bits from a first transceiver to a second transceiver. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 220:17-221:5. **Disputed** because the statement is incomprehensible and that the cited testimony supports the statement. *See* Ex. E, Tzannes Dep. Tr at 220:17-221:5.

18. At the time of the Asserted Patents, pseudo-random number generators and generating a value using a pseudo-random number generator was well understood, routine, and

conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 177:13-181:9; 221:12-15. **Undisputed** that Mr. Tzannes confirmed that pseudo random number generators and generating a value using a pseudo-random number generator "existed before" the Asserted Patents; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include a pseudo-random number generator or generating a value using a pseudo-random number generator were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 177:13-181:9; 221:12-222:24.

19. At the time of the Asserted Patents, associating a carrier signal with a value was well understood, routine, and conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 221:23-222:14, 223:18-24. **Undisputed** that Mr. Tzannes confirmed that associating a carrier signal with a value "existed before" the Asserted Patents; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include associating a carrier signal with a value determined by a pseudo-random number generator were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 221:16-223:24.

20. At the time of the Asserted Patents, using a bit scrambler in multicarrier communications to reduce PAR was well understood, routine, and conventional to a person of ordinary skill in the art. Ex. 14 (2021-09-23 Tzannes Dep. Tr.) at 108:24-109:9, 110:15-111:23, 224:15-19. **Undisputed** that Mr. Tzannes confirmed that bit scramblers and the use of bit scramblers to reduce PAR were known "before his inventions"; otherwise **disputed** that the cited testimony supports the statement and that the inventions of the Asserted Claims that include a bit scrambler were known before the priority date of the Asserted Patents. *See* Ex. E, Tzannes Dep. Tr at 108:24-109:9, 110:15-112:5, 224:15-19.

Dated: October 16, 2024                Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Rajendra A. Chiplunkar (admitted *pro hac vice*)
David Z. Petty (admitted *pro hac vice*)

**MCANDREWS, HELD & MALLOY, LTD.**

500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com
*Counsel for Plaintiff TQ Delta, LLC*